IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ANTONIA PITTS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:06CV782-CSC |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I. Introduction.**

Most Social Security disability cases are about whether the plaintiff claimant is

disabled; this case is not. Rather, this case is about when the plaintiff became disabled.

The ALJ concluded that the plaintiff was disabled as of February 1, 2000. The plaintiff

claims she became disabled on November 1, 1998.

The procedural history of this case is not routine either. The plaintiff applied for

disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §

401 et seq. and for supplemental security income benefits under Title XVI of the Social

Security Act, 42 U.S.C. § 1381 et seq., alleging that she was unable to work because of a

disability. Her application was denied at the initial administrative level. The plaintiff

then requested and received a hearing before an Administrative Law Judge ("ALJ").

Following the hearing, the ALJ found the plaintiff disabled as of February 1, 2000, but

not earlier.  The Appeals Council affirmed those findings but remanded the case so the

ALJ could address some "judicial errors."   The ALJ held a second hearing and reached

the same conclusion about when the plaintiff became disabled.  Once again the Appeals

Council had to remand the case because the tape recording of the second hearing was lost.

After a third hearing, the ALJ once more reached the same conclusion.  Finally, the

Appeals Council was satisfied and denied review.  The ALJ's final decision consequently

became the final decision of the Commissioner of Social Security (Commissioner).[1]  *See*

*Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The case is now before the court

for review pursuant to 42 U.S.C. §§ 405 (g) and 1383(c)(3).[2]  Based on the court's review

of the record in this case and the briefs of the parties, the court concludes that the decision

of the Commissioner should be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the

person is unable to

> engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result
> in death or which has lasted or can be expected to last for a continuous
> period of not less than 12 months...

---

[1]Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

[2]Pursuant to 28 U.S.C. § 636(c), the parties have consented to entry of final judgment by the United States Magistrate Judge.

To make this determination[3] the Commissioner employs a five step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Ingram v. Comm. of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which supports the

_____

[3]A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

[4]*McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

3

decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.  The Issues

A.  Introduction.  The plaintiff was 35 years old at the time of the hearing before the ALJ and has a 10th education.  The plaintiff's prior work experience includes work as a domestic, baby sitter/child care, wire inspector, order filler, poultry eviscerator, plastic bag inspector and fast food worker.  Following the administrative hearing, the ALJ concluded that the plaintiff has impairments of borderline intellectual functioning, sarcoidosis and uveitis with left eye blindness. .

B.  The Issues.  The plaintiff raises three issues: (1) The ALJ failed to assess the plaintiff's impairments under Listing 14.02B; (2) The ALJ improperly discounted the treating physician's opinion; and (3) The ALJ improperly evaluated the plaintiff's complaints of pain, blurred vision and eye pain and restrictive breathing capacity.  These several issues and the arguments in support of them relate to this court's ultimate inquiry of whether the Commissioner's disability decision is supported by the proper legal standards and by substantial evidence.  *See Bridges v. Bowen*, 815 F.2d 622 (11th Cir.

4

1987).

## IV. Discussion

A. The Listings Issue.  The plaintiff has sarcoidosis which is "a disease of unknown origin marked by formation of granulomatous lesions that appear especially in the liver, lungs, skin, and lymph nodes."  American Heritage Stedman's Medical Dictionary (2002), at http://www.dictionary.com.  A granuloma, in turn, is a "[c]hronic inflammatory lesion characterised by large numbers of cells of various types (macrophages, lymphocytes, fibroblasts, giant cells), some degrading and some repairing the tissues." On-line Medical Dictionary, at http://cancerweb.ncl.ac.uk/omd/index.html. Sarcoidosis, however,  is not one of the specific disease listings in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, which are those diseases which the Commissioner considers "severe enough to prevent a person from doing any gainful activity  . . . " Overview, Listing of Impairments.

In reliance on 20 C.F.R. § 404.1526,[5] the plaintiff contends that her impairments are equivalent to Listing 14.02, the listing for systemic lupus erythematosus which is "characterized clinically by constitutional symptoms and signs (e.g., fever, fatigability,

---

[5]How a medical equivalence is determined. We will decide that your impairment(s) is medically equivalent to a listed impairment in appendix 1 if the medical findings are at least equal in severity and duration to the listed findings. We will compare the symptoms, signs, and laboratory findings about your impairment(s), as shown in the medical evidence we have about your claim, with the medical criteria shown with the listed impairment. If your impairment is not listed, we will consider the listed impairment most like your impairment to decide whether your impairment is medically equal. If you have more than one impairment, and none of them meets or equals a listed impairment, we will review the symptoms, signs, and laboratory findings about your impairment to determine whether the combination of your impairments is medically equal to any listed impairment.

malaise, weight loss), multisystem involvement, and frequently, anemia, leukopenia, or thrombocytopenia. Immunologically, an array of circulating serum auto-antibodies can occur, but are highly variable in pattern." Listing, 14.00B.1. The plaintiff contends that the ALJ failed to abide by the law because he did not say that he made a finding about whether her condition was equivalent to Listing 14.02.

In this Circuit "[i]n applying the regulations on the Listing of Impairments, an ALJ must determine both whether a claimant "meets" and whether a claimant "equals" a listed impairment." *Davis v. Shalala,* 985 F.2d 528, 533 (11th Cir. 1993). But an ALJ does not have to follow any special format or formula and explaining his conclusion. In fact, after making that determination, all an ALJ has to say in explanation is how much weight he accorded to certain pieces of evidence and then state, based on all the record evidence, whether a claimant's condition is or is not medically or functionally equal to a listed impairment. *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002).

In this case the ALJ, who by the third hearing was pretty familiar with the evidence, reviewed the medical evidence and then said,

> Under the third step, a determination must be made as to whether or not the impairment or impairments are of listing severity. The Medical Listings . . . outline the findings which must be present under each of the body systems for an impairment to be found disabling. No medical expert has concluded that the claimant's impairments meet or equal a listed impairment prior to February 1, 2000. The claimant's impairments, singularly or in combination, have been compared to *all* listed impairments and specifically to Medical Listings 2.02 and 3.02B. I find that the severity of the claimant's impairments equals the requirements of Medical Listing 3.02B as of early to mid-2000, but not before.

(R. 36) (emphasis added).

Then in his findings, the ALJ said that the claimant's impairments singularly or in combination "do not meet or equal in severity *any* impairment set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1 prior to February 2000."  (R. 41) (emphasis added)  In short, the ALJ said he considered whether the plaintiff's impairments met or equaled all of the Listings and not just the specific ones at Listing 2.02 or 3.02B.  That is all that the ALJ was required to do; he is not required to detail every Listing he considered and rejected.[6]

B.  The Treating Physician's Opinion.  The opinion of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  A similar preference for the opinions of treating doctors is found in the Commissioner's regulations:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations or brief hospitalizations.

20 CFR § 404.1527(d)(2).  *See also* 20 C.F.R. § 404.1502 (Definition of treating source).

The plaintiff recognizes that an ALJ may reject a treating physician's opinion if

---

[6]In *Burnett v. Commissioner of Social Sec. Admin.*, 220 F.3d 112, 119 -120 (3d Cir. 2000), the Third Circuit held that an in addition to discussing the medical evidence considered and ALJ must identify the relevant Listings considered and rejected.  The absolutism of *Burnett* was not long lived.  In *Jones v. Barnhart*, 364 F.3d 501 (3d Cir.2004), the Third Circuit adopted a more flexible approach, holding that an ALJ is not required "to use particular language or adhere to a particular format in conducting his analysis," but must merely ensure "that there be sufficient explanation to provide meaningful review of the step three determination."  *Jones*, 364 F.3d at 505.  Thus, where the ALJ evaluated the available medical evidence in the record and set forth that evaluation in an opinion, the ALJ was not required to identify or analyze the most relevant Listing.  *Id*.

the opinion is not bolstered by the evidence, or where the evidence supports a contrary

finding.  *See Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir.1987); *Sharfarz v. Bowen*,

825 F.2d 278, 280-81 (11th Cir.1987).  Good cause to reject also may be found where the

treating physician's opinions are merely conclusory or inconsistent with the physician's

own medical records. *See Jones v. Dept. of Health & Human Services*, 941 F.2d 1529,

1532-33 (11th Cir.1991); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir.1991).

      The plaintiff argues that the ALJ's reasons for discounting the treating physician's

opinions are not supported by substantial evidence, and the ALJ failed to explain his

reasons for rejecting the treating physician's opinion.  The argument's premise at best is

misleading for it suggests that the ALJ wholly discredited the opinion of Dr. Goore, the

treating physician.  That suggestion is wrong as indicated by the first sentence of the

following paragraph from the ALJ's last decision.

> In this case, Dr. Goore's opinion is generally supported by medical
> evidence.  However.  I note that in July 2000, she reported that the claimant
> had been functioning at the level described in her Disability Questionnaire
> for "about 4 years" . . .  which would indicate that the claimant was
> functionally disabled to work as of July 1996.  This assertion is not
> supported by the doctor's own records, which indicate that in November
> 1997 the sarcoidosis was in remission, and had only a "slight flare up" in
> April 1998. . . .  In 1999, Dr. Wicks found that the claimant could do work
> related activities. . . .  Dr. Evans testified that the claimant's medical
> condition was progressive and deteriorated over time.  While the claimant
> has had a diagnosis of sarcoidosis for 5 years, she did not have the same
> level of severity for that entire time..  Moreover, Dr. Goore's opinion is
> unsupported and unsubstantiated by any clinical or laboratory findings.  Her
> own records do not support a disabling levels of severity, going back to
> 1996 while the claimant had a diagnosis of sarcoidosis in 1996, it was not
> of a disabling severity. Dr. Gore's (sic) own notes reflect at the claimant's
> condition progressively deteriorated over the years to the point where by

February 2000, the claimant's medical condition had deteriorated to the point where she was then disabled. . . . Further, due to its conclusory nature and internal inconsistencies with other records, Dr. Goore's opinion is properly rejected as a matter of law. . . . In addition, the claimant reported that she worked until 1998. . . . which is inconsistent with the doctor's assessment.

(R. 37)

The problem, of course, with this paragraph of the ALJ's decision is that it appears to both accept and reject Dr. Goore's opinion. That ambiguity is dispelled, however, by determining which "opinion" the ALJ is referring to. In a July 12, 2000, report and questionnaire, Dr. Goore stated the plaintiff had marked limitations dealing with work stress (R. 33) and was unable to work. (R. 32). In response to the question, "How long has your patient been functioning at the level described in your responses?" Dr. Goore stated, "about 4 years." The ALJ's decision shows that he accepted Dr. Goore's opinion with respect to the plaintiff's disability as of February 1, 2000, but rejected it with regard to any earlier time encompassed by Dr. Goore's statement that her functional abilities had been compromised for four years. There is substantial medical evidence supporting the ALJ's conclusion about the severity of the plaintiff's disease prior to February 1, 2000.

Dr. Goore noted in an examination on July 11, 1997, that the plaintiff had a "sarcoid flare up" for which she prescribed prednisone, 40ml. (R. 332) Ten days later Dr. Goore ordered the prednisone to continue for two more weeks and then decrease. (R. 331) On September 25, 1997, the prednisone was reduced to 20ml. *Id.* On November 12, 1997, Dr. Goore noted that the plaintiff's sarcoidosis was in remission. (R. 330). Then,

on April 2, 1998, Dr. Goore noted a "slight flare up of sarcoidosis." (R. 329). By June 10, 1998, her condition had apparently become worse because Dr. Goore noted that her rash had returned and that her joints "hurt all over." Dr. Goore prescribed *inter alia* prednisone 40ml as well as naproxyn. (R. 329). In December 1998, the plaintiff who had then been off prednisone for seven months apparently had another episode and required prednisone again, this time prednisone 20ml. The next time Dr. Goore saw the plaintiff was in February 2000. In describing this visit, Dr. Goore noted that the plaintiff "last had prednisone 10/99. She was doing better." (R. 327) It is at this time that her condition begins to worsen such that the ALJ concluded she was disabled as of February 1, 2000. But, as the recitation of Dr. Goore's medical records indicate, prior to that date her condition was not consistently severe and for substantial periods of time did not require treatment with prednisone. These inescapable facts are substantial evidence supporting the ALJ's conclusion about Dr. Goore's opinion.

C. Subjective Complaints. The plaintiff contends that the ALJ did not properly evaluate her subjective complaints of pain, fatigue, blurred vision and pain in her eyes and her restricted breathing capacity. On the question of subjective complaints the law is well settled.

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.1991). If the ALJ discredits subjective testimony, he

10

> must articulate explicit and adequate reasons for doing so. *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir.1987). Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true. *See Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir.1988).

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002)(holding that even though ALJ does not refer to circuit's pain standard, a reference to 20 C.F.R. § 404.1529, which contains the same language regarding the subjective pain testimony that the court interpreted when initially establishing its three-part pain standard, is sufficient to show that ALJ applied proper standard). *See also Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1214-15 (11th Cir.1991) (illuminating the circuit's history of the pain standard).

Where an ALJ decides not to credit a claimant 's testimony about pain (or other non-exertional impairments), the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Foote v.Chater*, 67 F.3d 1553, 1561-62 (11th Cir.1995); *Jones v. Department of Health & Human Servs.*, 941 F.2d 1529,1532 (11th Cir. 1991)(articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *See Hale v. Bowman*, 831 F.2d 1007,1012 (11th Cir.1987); *MacGregor v. Bowen*, 786 F.2d 1050,1054 (11th Cir.1986).

Here is what the ALJ said about the plaintiff's complaints.

> In the present case, I find that, prior to February 2000, the claimant's allegations of disabling pain and functional restrictions are disproportionate to the objective medical evidence. The record does not contain objective signs and findings that could reasonably be expected to produce the degree and intensity of pain and limitations alleged. There are no diagnostic

11

studies to show abnormalities that could be expected to produce such severe symptoms. The physical findings in the record do not establish the existence of neurological deficits, significant weight loss, muscle atrophy, or other observable signs often indicative of protracted pain of the intesity, frequency, and severity allege.

Furthermore, despite the allegedly disabling pain and functional limitations, there is little evidence of corroboration, medical or otherwise. For example, on November 12, 1997, Dr. Goore reported that the claimant's sarcoidosis was in remission, and that she was feeling fine. In April 1998, there was what Dr. Goore referred to as a "slight" flare up of sarcoidosis, and that the claimant had been off her medicine (Prednisone) for a period of seven months. In March 1999, it was noted that the claimant was symptom fee while taking steroids but, once discontinuing their use, the symptoms returned. In July 1999, it was reported that the claimant was restricted to "light" activities, which is consistent with the Physical Residual Functional Capacity Assessment completed in June 1999 by the State agency medical doctor . . . Thus, to the extent that the claimant's stated self serving limitation exceed those imposed upon her by competent medical professionals, I reject the former and accept the latter.

(R. 38)

In response, the plaintiff argues that the record shows she has shortness of breath and body aches, uveitis, spontaneous hyphema of the left eye, skin rash, massive enlargement of the liver and spleen, a one year history of 30 pound weight loss, sarcoid lesions on the face and arms, and restrictive lung disease. The plaintiff characterizes these conditions as "observable clinical findings [that] constitute objective medical evidence" which reasonable could produce the subjective symptoms about which the plaintiff complains. The essential difficulty with this argument is that it conflates signs and symptoms which have arisen at different times and to different degrees and restates them as if they occurred at the same time with the same duration. For example, the

12

plaintiff is correct that on September 25, 1995 Dr. Barry examined her and found "massive enlargement of the liver and spleen." (R. 338) Indeed, on July 21, 1997, Dr. Goore found hepatomegaly (enlarged liver). (R. 331). However, on September 25, 1997, Dr. Goore found "no hepat splenomegaly today." (R. 331).

An ALJ's determination must be upheld if it is supported by substantial evidence, and this court may not substitute its judgment for that of the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986). Substantial evidence supports the credibility conclusions of the ALJ.

Accordingly, the court concludes that the decision of the Commissioner should be affirmed. A separate final judgment will be entered.

Done this 25th day of January, 2008.


_____/s/Charles S. Coody_____
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE

13